# ATTACHMENT A



**AGREEMENT**

**BETWEEN**

**ARAMARK EDUCATIONAL SERVICES LLC**
**AT DREXEL UNIVERSITY**
**3210 CHESTNUT STREET**
**PHILADELPHIA, PA 19014**

**AND**

**TEAMSTERS UNION LOCAL NO. 115**
**AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS**

*FROM:*   *September 01, 2019*       *TO:*  *August 31, 2022*

# INDEX

ARTICLE 1 - RECOGNITION ........................................................................................ 1
ARTICLE 2 - UNION SECURITY AND CHECK-OFF .......................................... 1
ARTICLE 3 - NON DISCRIMINATION .................................................................... 2
ARTICLE 4 - EMPLOYEE DEFINITIONS ............................................................... 2
ARTICLE 5 - MANAGEMENT RIGHTS .................................................................. 3
ARTICLE 6 - STEWARDS ............................................................................................ 3
ARTICLE 7 - VISITATION RIGHTS ......................................................................... 4
ARTICLE 8 - BULLETIN BOARDS ........................................................................... 4
ARTICLE 9 - GRIEVANCE PROCEDURE .............................................................. 4
ARTICLE 10 - NO STRIKE, NO LOCKOUT AND PRIMARY PICKET LINE .... 5
ARTICLE 11 - BARGAINING UNIT WORK ........................................................... 6
ARTICLE 12 - SENIORITY ........................................................................................... 6
ARTICLE 13 - SUBCONTRACTORS ......................................................................... 7
ARTICLE 14 - CLARIFICATION OF WORK .......................................................... 7
ARTICLE 15 - TEMPORARY ASSIGNMENT ........................................................ 7
ARTICLE 16 - WAGES .................................................................................................. 8
ARTICLE 17 - OVERTIME AND PREMIUM PAY ................................................ 8
ARTICLE 18 - REST PERIODS ................................................................................... 9
ARTICLE 19 - HOLIDAYS .......................................................................................... 10
ARTICLE 20 - PERSONAL HOLIDAYS ................................................................. 10
ARTICLE 21 - VACATIONS ...................................................................................... 11
ARTICLE 22 - JURY DUTY ....................................................................................... 12
ARTICLE 23 - LAYOFF AND LEAVE OF ABSENCE ....................................... 12
ARTICLE 24 - FUNERAL LEAVE ........................................................................... 13
ARTICLE 25 - SICK LEAVE ...................................................................................... 13
ARTICLE 26 - RETIREMENT .................................................................................... 14
ARTICLE 27 - MEAL ALLOWANCE ..................................................................... 15
ARTICLE 28 - SANITARY CONDITIONS ............................................................ 15
ARTICLE 29 - NOTICE OF CONTRACT TERMINATION ............................... 15
ARTICLE 30 - HEALTH AND WELFARE AND LIFE INSURANCE .............. 15
ARTICLE 31 - SCHOLARSHIP AND LEGAL FUNDS ....................................... 17
ARTICLE 32 - MAINTENANCE OF STANDARDS ............................................. 19
ARTICLE 33 - DISCIPLINE AND DISCHARGE ................................................... 19
ARTICLE 34 - DRUG & ALCOHOL TESTING POLICY .................................... 21
ARTICLE 35 - SEPARABILITY AND SAVINGS .................................................. 22
ARTICLE 36 - GENERAL CLAUSES ....................................................................... 22
ARTICLE 37 - WORKERS COMPENSATION TEMPORARY TRANSITIONAL DUTY PROGRAM ..... 23
ARTICLE 38 - JOB BID AND JOB POSTING ........................................................ 23
ARTICLE 39 - RESPECT AND DIGNITY ............................................................... 25
ARTICLE 40 - LABOR MANAGEMENT COMMITTEE ..................................... 25
ARTICLE 41 - HANDBOOK ...................................................................................... 25
ARTICLE 42 - TERM ................................................................................................... 25
APPENDIX A - ATTENDANCE POLICY ............................................................... 27
APPENDIX B - JOB POSTING TEMPLATES ........................................................ 28
LETTER OF UNDERSTANDING ............................................................................. 30

This Agreement is entered into as of the 1st day of September, 2019, between Aramark Educational Services LLC at Drexel University, 3210 Chestnut Street, Philadelphia PA 19014 (hereinafter referred to as the "Company" or the "Employer") and the Teamsters Union Local No. 115 of Philadelphia, Pennsylvania, affiliated with the International Brotherhood of Teamsters (hereinafter referred to as the "Union").

WHEREAS, the parties hereto desire to establish the standards and hours of labor, rates of pay, and other conditions under which the employees classified herein shall work for the Employer during the life of this Agreement and thereby promote a relationship between the parties hereto providing for more harmonious cooperation and mutual benefit.

NOW, THEREFORE, in consideration of the performance in good faith by both parties, individually and collectively, of the terms and conditions of this Agreement, and intending to be legally bound thereby, the parties agree to and with each other as follows:

## ARTICLE 1 - RECOGNITION

1.1     The Employer recognizes the Union as the exclusive collective bargaining representative with respect to wages, hours, and working conditions of all Cafeteria Department, Retail Department and Catering Department employees employed by Aramark Educational Services LLC at Drexel University, headquartered at 3210 Chestnut Street, Philadelphia, Pennsylvania; but excluding all other employees, including office clerical employees, janitorial employees (other than those directly employed by the cafeteria, retail or catering departments), casual employees, students, manager trainees, guards, and supervisors as defined in the Act.

## ARTICLE 2 - UNION SECURITY AND CHECK-OFF

2.1     It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing, and those who are not members on the effective date of this Agreement, shall, on the thirtieth (30th) calendar day following the effective date of this Agreement, become and remain members in good standing of the Union.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date, shall, on the thirtieth (30th) calendar day following the beginning of such employment, become and remain members in good standing of the Union.  Good standing shall require only the payment of the initiation fee and monthly periodic dues uniformly required as a condition of retaining membership.

2.2     The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon fourteen (14) calendar days written notice from the Union to such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person.

Further, the failure of any person to maintain his/her Union membership in good standing as required herein, upon fourteen (14) calendar days written notice to the Employer by the Union to such effect, obligate the Company to discharge such person.  The Union agrees to indemnify the Employer from any action arising as a result of the Employer complying with this Article.

1

2.3     Subject to existing law, the Employer may, when in need of employees, first notify the Union of the opening and the Union shall supply the necessary personnel if available.  If the Company notifies the Union and the Union is unable to supply employees within two (2) working days after a request is received, the Employer shall have the right to hire new employees from any source.

2.4     ***Dues and Initiation Fee:*** It is understood and agreed between the Employer and the Union that the Employer will deduct any back unpaid union dues and initiation fees owed the Union (provided such indebtedness for dues or initiation fees was incurred during employment with the Employer) as well as current monthly dues and initiation fees, from the paycheck of all employees who have signed proper legal authorization for such deductions and who are covered by the Agreement, on the last pay day of the month preceding the current month for which current union dues and initiation fees are due the Union.  The Employer further agrees to remit to the Secretary-Treasurer of the Union, by the 15th day of the following month, all Union dues and initiation fees so deducted from the paychecks of employees covered by this Agreement.  The Union agrees to indemnify and hold harmless the Employer from any action arising from compliance with the terms of this Article.

2.5     ***Teamsters Union Local No. 115 Political Action Fund:*** Upon receipt of written authorization for deductions from wages signed by the employee, the Employer agrees to deduct from the wages of employees their contributions to the Teamsters Union Local No. 115 Political Action Fund and Social Fund, or such similar organizations as may be requested by the Union.  The Employer will make deductions on a bi-weekly basis and will forward the amounts deducted to the Teamsters Union Local No. 115 Political and Social Fund, 10965 Decatur Road, Philadelphia, Pennsylvania 19154, by the 15th day of the folllowing month.  No such authorization shall be recognized if it is in violation of state or federal law.  No deduction shall be made if it is prohibited by applicable law.

## ARTICLE 3 - NON DISCRIMINATION

3.1     No employee or applicant for employment covered by this Agreement shall be discriminated against because of membership in the Union or activities on behalf of the Union.

3.2     Neither the Employer, Employees or the Union shall discriminate against any employees because of the employee's race, color, religion, sex, sexual orientation, age, national origin, disability, veteran status or any other personal characteristic that is protected by applicable law.

## ARTICLE 4 - EMPLOYEE DEFINITIONS

4.1     Full-time employees shall be defined as employees who are regularly scheduled to work thirty (30) hours or more per week. Full-time employees working less than forty (40) hours per week shall be given preference in work opportunities over casual employees in their job classification unless otherwise provided in the Agreement.

4.2     There will be no less than thirty-seven (37) employees who will be guaranteed forty (40) hours work per week. Effective September 1, 2018 there will be no less than forty (40) employees who will be guaranteed forty (40) hours per week. These guarantees are not applicable during the summer break period or during break periods during the academic year provided that there is a reduction of hours of operation in or temporary closure of certain operations.

4.3     Part-time employees shall be defined as employees who are regularly scheduled to work more than twenty (20) hours per week but less than thirty (30) hours per week. Part-time employees working less than thirty (30) hours per week shall be given preference in work opportunities over casual employees in their job classification unless otherwise provided in the Agreement.

4.4.    "Casual employees" shall be defined as employees who are scheduled to work on an as needed, non-regular basis. Casual employees working less than twenty (20) hours per week are not covered by this Agreement. The use of casual employees shall not erode the bargaining unit.

4.5     New employees shall be hired on a probationary status for a period of sixty (60) calendar days and may be discharged during said period with or without cause. If an employee is discharged during his/her probationary period the Union will not file a grievance.

## ARTICLE 5 - MANAGEMENT RIGHTS

5.1     Management retains its inherent right to manage the affairs of the business, including the right to direct its business operations, direct the workforce, and establish the methods of operations and work schedules. It is recognized that the well-being of both parties is directly dependent upon the skill and efficiency with which the business of the Employer is conducted, and that any assumption of the functions of management by representatives of the Union or any employees represented by it, is contrary to the intent and purpose of this Agreement.

## ARTICLE 6 - STEWARDS

6.1     The Employer recognizes the right of the Union to designate no more than five (5) shop stewards from the seniority list.  The authority of shop stewards so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

A.      The investigation and presentation of grievances with the Employer or the designated representative in accordance with the provisions of the collective bargaining agreement.

B.      The collection of dues when authorized by appropriate Union action.

C.      The transmission of such messages and information which shall originate with, and are authorized by the Union or its officers, provided such messages and information:

(i)      Have been reduced to writing, or

(ii)     If not reduced to writing, are of a routine nature and do not involve work stoppages, slow downs, refusal to handle goods, or any other interference with Employer's business. Shop Stewards have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Union.  The Employer recognizes these limitations upon the unauthorized acts.  The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the Shop Steward has taken unauthorized strike action, slow down or work stoppage in violation of the Agreement.

6.2     Stewards shall be permitted reasonable time to investigate, present and process grievances on Employer property without loss of time or pay during his or her regular working hours. Such time spent in handling grievances during the steward's regular working hours shall be considered working hours in computing daily and/or weekly overtime if within the regular schedule of the steward. Stewards will request approval from their supervisor or manager prior to leaving their regularly assigned duties before investigating, presenting and processing grievances. Such requests will not be unreasonably denied.

## ARTICLE 7 - VISITATION RIGHTS

7.1     An authorized representative of the Union will make reasonable attempts to notify the General Manager or authorized designee, by phone or by email, in advance of arriving on the Employer's or client's premises, the Union accredited representative will notify the General Manager or authorized designee, in person, of his/her presence prior to speaking to any employee. It is agreed that Union duties and activities will not be carried on during hours of work, except as provided for in this Agreement. Following the Client's security regulations, Union officials shall have the right to enter the premises to satisfy themselves that this Agreement is being observed, and shall notify the employer representative of their intent to do so. The Union representatives will not disrupt the work force.

7.2     The Union, Business Agent or their representatives shall have the right to examine time sheets and other records pertaining to the computation of compensation of fringe benefits of any individual whose pay is in dispute. Such examination will not take place during rush hours when serving lines are open.

## ARTICLE 8 - BULLETIN BOARDS

8.1     The Employer agrees to provide a bulletin board at each Cafeteria, Retail and Catering unit operated by Aramark Education Services LLC at Drexel University for the purpose of posting Union notices concerning matters directly affecting the employees of the Employer.

## ARTICLE 9 - GRIEVANCE PROCEDURE

9.1     A grievance shall be defined as any dispute arising out of the expressed terms or conditions contained within this Agreement.

9.2     All grievances on behalf of employees will be submitted in writing on forms provided by the Union. All grievances shall state the Article violated and proposed remedy.

9.3     All grievances between the Employer and the Union or the Employees and the Employer shall be processed in the following manner:

Step 1:     The Union Steward may raise any grievance, within fourteen (14) calendar days of the action or knowledge of the subject of the grievance, with the Unit Manager in an attempt to reach a satisfactory agreement. Any grievance not submitted within fourteen (14) calendar days of the action or knowledge of the subject of the grievance shall be denied. The Unit Manager shall meet with the Steward and grievant and provide a written response to the grievance with a copy to the Union Business Agent within seven (7) days of receiving the grievance. The Steward may submit the grievance to Step 2 if the Unit Manager fails to meet and provide a written response to the grievance within seven (7) calendar days of receiving the grievance.

4

Step 2:        If a satisfactory solution cannot be reached in Step 1, the Steward may refer the matter to the Union Business Agent and the Union Business Agent may submit the grievance to the Resident District Manager, or his/her designee within seven (7) calendar days of the Step 1 response or the due date of the Step 1 response and a meeting shall be scheduled. The scheduling of such meeting shall not be unreasonably delayed. The Resident District Manager, or his/her designee, shall render a written decision to the grievance to the Union Business Agent within seven (7) calendar days of the conclusion of the Step 2 meeting. The Union Business Agent may submit the grievance to Step 3 if the Resident District Manager, or his/her designee, fails to provide a written response to the grievance within seven (7) calendar days of meeting to resolve the grievance or within seven (7) calendar days if the Union deems the Step 2 response not satisfactory. If the Union submits a Step 3 appeal to arbitration when there has been no timely response to the Step 2 appeal, the Employer agrees that the filing fee with the AAA will be split on a 50-50 basis.

Step 3:        If a satisfactory solution cannot be reached in Step 2, the Union may submit the matter to an arbitrator to be selected pursuant to the procedures of the American Arbitration Association (AAA). The arbitrators on the list shall be members of the National Academy of Arbitrators. The decision of the arbitrator shall be final and binding upon the Employer and Union. It is understood that the Arbitrator shall have the power to modify penalties in disciplinary cases, but shall not have the ability or power to, in any way, modify, change, restrict or extend any terms of the Agreement. The arbitrator may be called upon to interpret the CBA.

9.4    Grievances concerning disciplinary suspensions or terminations may be submitted directly to Step 2.

9.5    Time limits may only be extended by mutual agreement at any step of the grievance procedure.

## ARTICLE 10 - NO STRIKE, NO LOCKOUT AND PRIMARY PICKET LINE

10.1    *No Strikes or Other Interference:* The Union agrees that there will be no strikes (general or sympathetic or otherwise), walkouts, stoppages of work, sit-downs or slowdowns.

10.2    *Lockouts:* The Employer agrees not to conduct a lockout during the life of this Agreement.

10.3    *Union's Best Efforts:* The Union agrees that, in the event of any violation of Section 1 of this Article, the Union will use its best efforts to cause such violation to cease and to cause work to fully resume.

10.4    *Remedies:* The Employer may impose any disciplinary action, including discharge, upon any or all employees involved in a violation of Section 1 of this Article. Any discipline under this Article shall be subject to the grievance and arbitration procedures of this Agreement, but only as to the question of whether or not the employee engaged in the activity.

10.5    *Primary Picket Line:* It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line including the primary picket line of Union's party to this Agreement, and including primary picket lines at the Employer's places of business.

10.6    The Union and Employer shall meet and attempt to provide for reasonable accommodations for work to resume should the Employer's place of business be impacted by a primary picket line or primary labor dispute affecting operations.

10.7    In the event of a refusal to cross a picket line under Article 10.5 of the CBA the Union understands that honoring Article 10.5 may constitute a bona fide emergency under Article 11.

## ARTICLE 11 - BARGAINING UNIT WORK

11.1    No Supervisor or other non-union personnel shall perform the duties done ordinarily by employees in the bargaining unit except for purposes of instruction, short peak periods which shall not be used to erode the bargaining unit, training and bona fide emergencies.

## ARTICLE 12 - SENIORITY

12.1    In all cases of any increase or decrease of the working force and for promotion, the main factor to be considered will be the length of continuous service with the Employer within the bargaining unit. In each instance a determining factor shall be ability and necessary qualifications to perform the particular job.

A.    In the event two (2) or more employees are hired on the same day, seniority shall be first decided by which employee clocked-in earliest. If the clock-in time cannot be determined, seniority shall be decided by alphabetical order of the employee's last name.

12.2    Where the Employer knows the date of layoff that the layoff shall exceed thirty (30) days, the laid off employee shall be paid in full for all monies due him or her on the next scheduled pay day after the layoff date.

12.3    An employee's seniority shall be terminated for the following reasons:

A.    Quitting

B.    Discharge for cause

C.    If an employee who has been laid off fails to return to work within ten (10) work days after being requested to do so by the Employer by Certified Letter to the employee's latest address appearing in the Employer's records with a copy to the Union Business Agent

D.    Continued layoff for twelve (12) months

E.    Absence due to physical disability for a period longer than six (6) months, provided that for employees with more than two hundred fifty (250) days of active service, the period shall be one (1) year

F.    Failure to return from an approved leave of absence within ten (10) work days after being requested to do so by the Employer by Certified Letter to the employee's latest address appearing in the Employer's records with a copy to the Union Business Agent

G.    Failure to notify management of absence for a period of three (3) consecutive days unless there are extenuating circumstances

12.4    The Shop Stewards shall have super-seniority for the purpose of layoff and recall.

12.5     There shall be one (1) seniority list for all bargaining unit employees in the Catering Department, Cafeteria Department and Retail Department listing the full name and date of hire for each. There shall be one seniority list for all employees in the Catering Department listing the full name and date of hire for each.

12.6     Layoffs - Employees shall be given at least five (5) days notice of layoff if possible.

12.7     The Employer shall submit a written seniority list as described in Article 12.5 to the Union Business Agent by email or fax with copies posted at each Cafeteria, Retail and Catering Department location by the 1st calendar day of each month. Any objection to the seniority list shall be treated as a grievance.

12.8     With respect to personnel transactions, such as layoffs, transfers, shift scheduling, job postings, and holidays, vacation and overtime work opportunities, the main factor to be considered will be length of continuous service with the Employer within the bargaining unit.  In each instance, a determining factor shall be ability and necessary qualifications to perform the particular job.   Whenever a vacancy occurs in a more desirable job or shift, such vacancy shall be announced by the Employer in accordance with Article 37 – Job Bid and Job Posting.

12.9     If a new employee is retained beyond his/her probationary period (sixty (60) calendar days), his/her seniority shall accrue from his/her original date of hire.

12.10   Employees who previously worked for prior contractor(s) or Drexel University will date their seniority from the earliest continuous date of employment in the bargaining unit at Drexel University.

## ARTICLE 13 - SUBCONTRACTORS

13.1     The Employer will not subcontract jobs done by the bargaining unit unless no bargaining unit employee is available, qualified and willing to do such work.

## ARTICLE 14 - CLARIFICATION OF WORK

14.1      All cashiers will be given sufficient time at the beginning of the shift and at the end of the shift to count the bank.

## ARTICLE 15 - TEMPORARY ASSIGNMENT

15.1     An employee covered by this Agreement who is temporarily assigned to work in another classification for more than one (1) hour, shall receive the rate of pay for the work he/she is required to do.  If the rate of pay is higher, he/she shall receive the higher rate.  If an employee is asked to work at a lower classification and his/her regular rate is higher, he/she shall receive the regular rate.  If an employee is given an opportunity to accept work in a lower classification at a lower rate of pay versus layoff, he/she shall receive the applicable rate for work in the lower classification, and during such period he/she shall not lose his/her seniority status in his/her original classification.

## ARTICLE 16 - WAGES

16.1    The following rate scale and classifications shall be utilized:

| Food Service Worker (Server, Food Prep, Utility, Receiver) | $11.15 per hour |
| --- | --- |
| Cashier | $11.15 per hour |
| Cook 1 | $11.35 per hour |
| Cook Senior | $13.50 per hour |
| Baker | $16.00 per hour |
| Caterer | $13.00 per hour |
| Barista | $11.35 per hour |

16.2    Effective September 01, 2019 all employees shall receive an increase of 3.0% per hour.

16.3    Effective September 01, 2020 all employees shall receive an increase of 3.0% per hour.

16.4    Effective September 01, 2021 all employees shall receive an increase of 3.25% per hour.

16.5    The workweek shall commence with and reflect the pay cycle of the Employer. The Employer will provide the Union with thirty (30) calendar days' notice in the event of changes to the pay cycle.

16.6    All employees will be paid electronically by direct deposit or pay card on a weekly basis and will receive electronic pay statements. The transition from bi-weekly pay to weekly pay will be implemented as soon as practicable after all employees are being paid electronically and are receiving electronic pay statements.

## ARTICLE 17 - OVERTIME AND PREMIUM PAY

17.1    For all hours worked in excess of eight (8) in a day, an employee will be paid at one and one-half (1 ½) times the employee's regular rate. For all hours worked in excess of forty (40) per week, an employee will be paid at one and one-half (1 ½) times the employee's regular rate.

17.2    For all hours worked on the employee's sixth (6th) consecutive day of work, the employee shall be paid at one and one-half (1 ½) times the employees regular rate. For all hours worked on the employee's seventh (7th) consecutive day of work, the employee shall be paid at two (2) times the employee's regular rate.

17.3    As part of the below process, a volunteer list will be established and maintained by the Employer for assignment of extra hours when the need for extra hours occurs due to any unscheduled absence for a scheduled shift. Each individual shall retain the right to decline the assignment.

A.    Distribution of Additional Hours:

When the Employer has a need for additional work (overtime or additional hours) on a particular shift on a particular day the following process shall be utilized:

1.    The hours shall be offered in seniority order to employees working in the affected classification who have selected a permenant position at the location (e.g. Urban Eatery, Northside Dining Terrace, Hans Dining Center, etc.) and are presently working at the location; then

2.    The hours shall be offered in seniority order to employees working in the affected classification who have selected a permanent position at the location but are not presently working at the location; then

3.    The hours shall be offered in seniority order to the employees working in the affected classification on the volunteer list, then in seniority order to other qualified employees on the volunteer list; then

4.    The hours may be assigned to qualified Casual Employees.

5.    Employees who volunteer for overtime or additional hours shall not have a regular shift cancelled as a result of accepting overtime or additional hours unless at the employee's request.

6.    Management reserves the right to split additional hours. Employees must have the ability and necessary qualifications to perform the particular job. In the event employees decline additional hours, the Employer may in its discretion after Step 3 assign the work in inverse order of seniority by classification to qualified employees.

7.    Employees shall retain the right to decline the assignment of additional hours, unless the Employer has assigned the additional hours by inverse seniority in accordance with paragraph 6, above.

8.    Employees, excluding those working in the Catering Department, shall be limited to a total of fifty-two (52) hours worked per week unless mutually agreed upon by the Union and Employer to exceed such limit.

### ARTICLE 18 - REST PERIODS

18.1   As scheduled by the Employer there shall be one (1) fifteen (15) minute rest period for each four (4) hours of the working day.

18.2   As scheduled by the Employer, there shall be one (1) thirty (30) minute unpaid lunch period for all employees working more than five (5) hours per shift.

## ARTICLE 19 - HOLIDAYS

19.1    The following holidays or the days on which the holiday is observed by the Employer shall be considered as a non-work day:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King's Birthday | Thanksgiving (2 Days) |
| Memorial Day | One-half (1/2) Day for Christmas Eve |
| Independence Day | Christmas Day |

19.2    For all hours worked on holidays, an employee will be paid at a rate of one and a half (1 ½) times the rate for the job.

19.3    An employee whether or not scheduled to work on an observed holiday, shall receive his/her normal straight-time pay for each observed holiday, provided the employee works the last day on which he/she was regularly scheduled to work immediately prior to the observed holiday, and the first day on which he/she was regularly scheduled to work immediately after the observed holiday or is in pay status (as sick leave or taken as a vacation time) on each of these days.

19.4    Employees on layoff or leave of absence shall not be entitled to holiday pay, however, employees shall receive Christmas Eve and Christmas Day holiday pay even if on Christmas layoff.

19.5    The employee's normal per day work schedule during the academic term when the majority of the students are in full session will determine the number of hours paid for an employee's time off.

## ARTICLE 20 – PERSONAL HOLIDAYS

20.1    Each employee shall be eligible to receive six (6) personal holidays per year, after he/she completes one (1) full year of service.

20.2    Employees must submit a written notice, on forms provided by the Employer, at least seven (7) calendar days in advance of the date upon which and employee will utilize a personal holiday. The Employer shall respond to requests for personal holidays no later than two (2) calendar days prior to the date of the personal holiday requested. The Employer will not unreasonably deny an employee's request.

20.3    The employee's normal per day work schedule during the academic term when the majority of the students are in full session will determine the number of hours paid for an employee's time off.

20.4    Up to two (2) unused personal holidays will be paid out at the end each school year.

## ARTICLE 21- VACATIONS

21.1    All employees covered by this Agreement shall be eligible for such vacation benefits as are hereinafter set forth provided that such employees have met the following requirement of eligibility. June 1 of each calendar year shall be the eligibility date for the determination of employee vacation entitlement. In those instances, the vacation will be determined by the previous schedule. Catering staff will have vacation based on a schedule of forty (40) hours per week.

    A.    An employee who has more than twelve (12) months but less than six (6) years of continuous service as of the June 1 eligibility date entitles the employee to ten (10) days of paid vacation.

    B.    An employee who has more than six (6) years but less than fifteen (15) years of continuous service as of the June 1 eligibility date, entitles the employee to fifteen (15) days of paid vacation.

    C.    An employee who has more than fifteen (15) years of continuous service as of the June 1 eligibility date, entities the employee to twenty (20) days of paid vacation.

    D.    Those employees who, as of September 11, 1995 have over nineteen (19) years of service will be "grand-fathered" for twenty-five (25) days of paid vacation.

    E.    Effective June 1st after completion of twenty-five (25) years of service, full time employees who have not received a five (5) week vacation allotment will receive a one (1) time bonus payment of seven hundred fifty dollars ($750.00).

    F.    Effective June 1st after completion of twenty-five (25) years of service, part time employees who have not received a five (5) week vacation allotment will receive a one (1) time bonus payment of four hundred dollars ($400.00).

21.2    The phrase, "continuous service" shall mean continuous service with the University or prior contractors in accordance with Article 12.

21.3    The vacation period shall be June 15 to September 15.  An employee may take all of his/her earned vacation during the December academic break as scheduled by the University. Employees desiring to take vacation during the December academic break will submit a written request at least twenty-one (21) days prior to June 15. The Employer will not unreasonably deny said request.

21.4    Vacation scheduling shall be on a seniority basis within each work classification, with the most senior employee first to receive his preference provided there is no overlapping.

21.5    An employee who quits shall be entitled to be paid for earned but unused vacation pay. Earned vacation will be calculated from June 1st to the date of resignation.

21.6    If a holiday falls on a vacation, the employee shall receive pay for that holiday.  The day shall be considered a holiday, and the employee will receive another paid vacation day instead.

21.7    A day's paid vacation shall consist of employee's regularly scheduled daily hours at the employee's straight-time hourly rate.

21.8    The employee's vacation pay shall be given to the employee in the employee's last paycheck prior to the beginning of the employee's vacation, provided the employee has requested such at least two (2) weeks prior to

the beginning of vacation. Those employees who pick a summer job through the job pick process will be eligible to receive vacation pay when they go on vacation provided notice is given to the employer at the time of summer job pick.

## ARTICLE 22 - JURY DUTY

22.1    An employee covered by this Agreement who is called for jury duty in his/her own county or federal court shall be granted time off from work to serve as a juror, and this time off from work to serve as a juror will not be deducted from the employee's basic salary covering his/her regularly scheduled hours of work; however, the employee will turn over to the Employer the compensation received from the court for such services. In the event the check from the court is greater than the salary of the employee, the excess will be returned to the employee. Upon first receiving summons for jury duty, the employee should present such summons to his/her supervisor so that he/she, the supervisor, can make the necessary notations as to the reason for his/her absence.

## ARTICLE 23 - LAYOFF AND LEAVE OF ABSENCE

23.1    An employee on layoff or leave of absence shall not be entitled to insurance benefits or any other benefits conferred by this Agreement, unless otherwise specified herein. However, the employees will continue insurance benefits during Christmas layoff, and the Employer will continue to pay its portion of the cost of this benefit.

23.2    Any employee on layoff or leave of absence who is called to work shall preserve his/her original seniority date for a period not to exceed one (1) year.

23.3    *Personal Leaves:* An employee may, upon written application to the Employer, and upon submission of a reasonable reason to the Employer, be granted a leave of absence without pay for thirty (30) days. However, the leave can be extended an additional thirty (30) days, by mutual agreement upon written application to the Employer.

23.4    *Leaves Due to Illness/Disability:* Leaves of absence due to illness/disability may begin any time upon authorization from the employee's attending physician for a period of up to six (6) months after which it can be extended up to an additional six (6) months, for a total of 12 months, with medical documentation of inability to perform their duties.

23.5    *Military Leave:* Any employee drafted or enlisted in the Armed Services of the United States shall be guaranteed all the rights and privileges to which they are entitled under the law.

23.6    *Family Medical Leave:* The parties agree to comply with the terms of the Family and Medical Leave Act of 1993 in the administration of the collective bargaining agreement, and no benefits or terms of the Agreement will be reduced by complying with the terms of the Family and Medical Leave Act.

23.7    Any leave of absence granted under the CBA will run concurrently with any statutory leave including but not limited to FMLA and ADA.

## ARTICLE 24 - FUNERAL LEAVE

24.1    After the completion of the probationary period employees shall be granted a leave of absence without loss of pay of not more than three (3) days in the case of the death of a mother, father, son, daughter, spouse, legal marital partner, sister, brother, grandparents, grandchilden, mother-in-law, or father-in-law of the employee for the purpose of making arrangements and for attending the funeral.

24.2    If the funeral takes place out of town, the employee, upon request shall be granted an unpaid leave of absence for two (2) additional days to attend said funeral.

## ARTICLE 25 - SICK LEAVE

25.1    Unused sick leave will be paid out at the end of each school year, or upon resignation or termination for any reason except just cause.  Further, if an employee resigns or is terminated for any reason prior to the end of the sick year, the Employer shall deduct the pro-rata portion of any sick leave used but not yet earned from the employee's last paycheck.

25.2    The Employer's present sick leave program is as follows: Sick pay for employees normally scheduled to work less than eight (8) hours per work day will be adjusted pro-rata to the number of hours per work day the employee is normally scheduled to work.

 A.    All non-probationary employees shall be entitled to six (6) sick days per year with pay. The sick leave year shall be September 1 to August 31.

 B.    Future hires shall be entitled to a pro rata sick leave determined on the basis of the employee's date of hire upon completion of the probationary period. Sick days shall be pro-rated from September 1 through August 31 as follows:

| Month Hired | Sick Leave | Month Hired | Sick Leave |
|---|---|---|---|
| September | 5.5 | March | 2.5 |
| October | 5.0 | April | 2.0 |
| November | 4.5 | May | 1.5 |
| December | 4.0 | June | 1.0 |
| January | 3.5 | July | 0.5 |
| February | 3.0 | August | 0.0 |

 C.    New hires are not eligible to take sick leave until after completion of the sixty (60) calendar day probationary period.

25.3    To receive sick pay, the Employer may require an employee to furnish written proof from a medical doctor after absences of three (3) or more consecutive days.

25.4    To receive sick pay, the employee must notify his/her supervisor or a member of the management staff at least two (2) hours before his/her scheduled reporting time, unless the employee is scheduled to report on or before eight (8) o'clock a.m., for which he/she must notify his/her supervisor or a member of the management staff at least one (1) hour before his/her reporting time.

## ARTICLE 26 - RETIREMENT

26.1    Effective September 1, 2019 the employer shall contribute the following to the Teamsters Union Local No. 115 Pension Fund for all employees who receive compensation for a minimum of thirty-two (32) hours per week:

     A.    Effective September 1, 2019 the employer shall contribute $72.67 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

     B.    Effective January 1, 2020 the employer shall contribute $78.05 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

     C.    Effective January 1, 2021 the employer shall contribute $83.82 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

     D.    Effective January 1, 2022 the employer shall contribute $90.03 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

26.2    Effective September 1, 2019 the employer shall contribute the following to the Teamsters Union Local No. 115 Pension Fund for all employees who receive compensation for a minimum of twenty (20) hours per week and no more than thirty-two (32) hours per week:

     A.    Effective September 1, 2019 the employer shall contribute $44.99 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

     B.    Effective January 1, 2020 the employer shall contribute $48.32 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

     C.    Effective January 1, 2021 the employer shall contribute $51.89 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

     D.    Effective January 1, 2022 the employer shall contribute $55.74 per week, per non-probationary employee to the Teamsters Union Local No. 115 Pension Fund.

26.3    Contributions

     A.    These sums shall be remitted on or before the fifteenth (15th) day of each month for the preceding month to the Teamsters Union Local No. 115 Pension fund, 10965 Decatur Road, Philadelphia, Pennsylvania 19154.

     B.    Such monthly payments shall be made to the Fund no later than the time herein specified. If the Employer fails to make payments to the Fund as required in the paragraph immediately above, the Employer shall be liable for and obligated to pay any late fees due and shall be liable for all contributions accrued and unpaid.

     C.    The Trustees of the Fund shall have the right to require the Employer to make available to the Trustees, or their duly accredited representatives, all time cards, payroll records, Social Security records, Withholding Tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

D.    By the execution of this Agreement, the Employer agrees to execute the appropriate Trust Agreements necessary to the establishment and administration of the Fund, and also appoints and authorizes the Employer Trustees of the Fund to enter into appropriate Trust Agreements necessary for the administration of such Fund. The employer further designates the Employer Trustees of the Fund as its representatives and Trustees, and waives all notice and ratifies all actions already taken by the Trustees of the said Fund within the scope of their authority.

## ARTICLE 27 - MEAL ALLOWANCE

27.1   As scheduled by the Employer, all employees will receive one meal per working day, that meal being lunch if the employee is an early starter or dinner in the afternoon if the employee is a late starter. The meal may be selected from the regular cafeteria customer menu of the day.

## ARTICLE 28 - SANITARY CONDITIONS

28.1    The Employer shall maintain sanitary conditions, including adequate lockers, toilets, and washing facilities. Both parties shall comply with all applicable regulations of the City, State, and Federal Departments of Health.

## ARTICLE 29 - NOTICE OF CONTRACT TERMINATION

29.1   This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns during its term. The Employer agrees to give the Union notice within thirty (30) days of the termination of its contract with Drexel University by either party for the operation of the cafeteria unit. It is understood by this Article that the parties hereto shall not use any leasing device to a third party to evade this Agreement.

If the Employer shall sell or otherwise dispose of substantially all of its machinery and equipment, and the purchaser or person, firm, or corporation which receives the same shall use such or similar machinery and equipment or substantially the same employees, then such purchaser or possessor shall be bound by the terms hereto and the employees shall be covered by the Agreement

## ARTICLE 30 - HEALTH AND WELFARE AND LIFE INSURANCE

30.1    Effective September 1, 2019 and throughout the life of this Agreement, the Employer shall participate in the Teamsters Union Local No. 115 Health & Welfare Fund to provide Health Insurance, Dental Insurance, Vision Insurance and Prescription Insurance as follows:

A.    Minimum Annual Benefit Participation

1.    Effective September 1, 2019 no less than one-hundred (100) employees shall participate.

2.    Effective January 1, 2020 no less than one-hundred five (105) employees shall participate.

3.    Effective September 1, 2020 no less than one-hundred ten (110) employees shall participate.

B.    Eligibility

1.    Effective September 1, 2019 employees shall be eligible, subject to 29.1 A above, for Health Insurance, Dental Insurance, Vision Insurance and Prescription Insurance benefits as follows:

    A.    All employees covered as of August 31, 2019.

    B.    Seniority.

2.    The benefit eligibility period shall be September 1 through August 31 of each year.

3.    Health Insurance, Dental Insurance, Vision Insurance and Prescription Insurance benefits shall be provided to eligible employees for the duration of the benefit period unless an employee quits or is terminated.

    A.    The Employer shall continue Health Insurance, Dental Insurance, Vision Insurance and Prescription Insurance benefits for ninety (90) days for any employee who is laid off due to reduction in force, takes approved leave of absence or suffers an on-the-job injury.

C.    Contributions

1.    Effective September 1, 2019   the Employer shall contribute $235.00 per week, per employee to the Teamsters Union Local No. 115 Health & Welfare Fund.

2.    Effective January 1, 2020 the Employer shall contribute $240.29 per week, per employee the Teamsters Union Local No. 115 Health & Welfare Fund.

3.    Effective January 1, 2021 the Employer shall contribute $245.69 per week, per employee to the Teamsters Union Local No. 115 Health & Welfare Fund.

    A.    These sums shall be remitted on or before the fifteenth (15th) day of each month for the preceding month to the Teamsters Union Local No. 115 Health and Welfare Fund, 10965 Decatur Road, Philadelphia, Pennsylvania 19154.

    B.    Such monthly payments shall be made to the Fund no later than the time herein specified. If the Employer fails to make payments to the Fund as required in the paragraph immediately above, the Employer shall be liable for and obligated to pay any late fees due and shall be liable for all contributions accrued and unpaid.

    C.    The Trustees of the Fund shall have the right to require the Employer to make available to the Trustees, or their duly accredited representatives, all time cards, payroll records, Social Security records, Withholding Tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

    D.    By the execution of this Agreement, the Employer agrees to execute the appropriate Trust Agreements necessary to the establishment and administration of the Fund, and also appoints and authorizes the Employer Trustees of the Fund to enter into

appropriate Trust Agreements necessary for the administration of such Fund. The employer further designates the Employer Trustees of the Fund as its representatives and Trustees, and waives all notice and ratifies all actions already taken by the Trustees of the said Fund within the scope of their authority.

30.2    *Short Term Disability:* The Employer will provide a weekly benefit of One Hundred Seventy Dollars ($170.00) for non-occupational illnesses or accidents to all eligible employees who have completed the probationary period effective the month following completion of the probationary period. Benefits are payable on the first day of absence for an accident and eighth (8th) day of absence for illness. The benefit period for any single absence is a maximum of thirteen (13) weeks. An employee who is entitled to paid sick leave as set forth in the contract shall not be entitled to the weekly disability benefit for any week or portion thereof that the employee is entitled to receive paid sick leave or would not have been working.

30.3    The Employer shall pay the premium for eligible employees who have completed the probationary period effective the month following completion of the probationary period for Ten Thousand Dollars ($10,000.00) life insurance, plus double indemnity.

30.4    The parties agree that if any employees not covered by Article 29.1 above are entitled to benefit coverage under the terms of the ACA the Company will offer them a medical plan which is compliant with the terms of the ACA.

A.    These employees would not be entitled to simultaneously participate in medical benefits under Article 29.1.

B.    The waiting period for benefits would be the first of the month following completion of sixty (60) days of employment.

C.    Aramark will provide eligible employees the opportunity to enroll in Medical benefits provided through an Aramark sponsored carried.

1.    The plan(s), plan design(s) and schedule(s) of benefits may be adjusted from time to time in line with the changes in the medical benefits package for all Aramark employees or as required by law. Other changes might include a change in the insurer, health maintenance organization, or other service provider that provides the benefits or establishes the network of participating providers. Any changes to premiums or eligibility will be effective with the start of the plan year, January 1st.

2.    Employee contributions for benefits will be at the standard Aramark rates and are subject to change from time to time in accordance with changes made for all Aramark employees or as required by law.

## ARTICLE 31 - SCHOLARSHIP AND LEGAL FUNDS

31.1    *Scholarship Fund:* Effective September 1, 2019 the Employer shall contribute twenty-five cents ($0.25) per week, per non-probationary employee to the Teamsters Union Local No. 115 Scholarship Fund (hereinafter referred to as the "Fund").

17

A.      These sums shall be remitted on or before the fifteenth (15th) day of each month for the preceding month to the Teamsters Union Local No. 115 Scholarship Fund, 10965 Decatur Road, Philadelphia, Pennsylvania, 19154.

B.      Such monthly payments shall be made to the Fund no later than the time herein specified. If the Employer fails to make payments to the Fund as required in the paragraph immediately above, the Employer shall be liable for and obligated to pay any late fees due and shall be liable for all contributions accrued and unpaid.

C.      The Trustees of the Fund shall have the right to require the Employer covered by this Agreement to make available to the Trustees or their duly accredited representatives, all time cards, payroll records, Social Security records, Withholding Tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

D.      By execution of this Agreement, the Employer agrees to execute the appropriate Trust Agreements necessary to the establishment and administration of the Fund, and also appoints and authorizes the Employer Trustees of the Fund to enter into appropriate Trust Agreements necessary for the administration of such Fund. The Employer further designated the Employer Trustees of the Fund as its representatives and Trustees, and waives all notice and ratifies all actions already taken or to be taken by the Trustees of the said Fund within the scope of their authority.

31.2    *Legal Fund:* Effective September 1, 2019 the Employer shall to contribute seven dollars ($7.00) per week, per non-probationary employee to the Teamsters Union Local No. 115 Legal Fund (hereinafter referred to as "Fund").

A.      These sums shall be remitted on or before the fifteenth (15th) day of each month for the preceding month to the Teamsters Union Local No. 115 Legal Fund, 10965 Decatur Road, Philadelphia, Pennsylvania, 19154.

B.      Such monthly payments shall be made to the Fund no later than the time herein specified. If the Employer fails to make payments to the Fund as required in the paragraph immediately above, the Employer shall be liable for and obligated to pay any late fees due and  shall be liable for all contributions accrued and unpaid.

C.      The Trustees of the Fund shall have the right to require the Employer covered by this Agreement to make available to the Trustees, or their duly accredited representatives, all time cards, payroll records, Social Security records, Withholding Tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

D.      By the execution of this Agreement the Employer agrees to execute the appropriate Trust Agreements necessary to the establishment and administration of the Fund, and also appoints and authorizes the Employer Trustees of the Fund to enter into appropriate Trust Agreements necessary for the administration of such Fund. The Employer further designates the Employer Trustees of the Fund as its representatives and Trustees and waives all notice and ratifies all actions already taken or to be taken by the Trustees of the said Fund within the scope of their authority.

E.      Notwithstanding anything herein contained, it is agreed that in the event the Employer is delinquent in the payment of his contributions to the Health and Welfare, Pension, Legal and/or Scholarship Funds, under this Agreement, in accordance with the rules and regulations of the Trustees of such Funds, after the proper official of the Union has given seventy-two (72) hours' notice to the

Employer of such delinquency in Health and Welfare, Pension, Legal and/or Scholarship Funds, the employees or their representative shall have the right to take such legal or economic action as may be necessary until such delinquent payments are made; and it is further agreed that in the event such action is taken, the Employer shall be responsible to the Union and, through the Union, the employees for costs or losses resulting therefrom.

31.3    Payment for new employees will commence for the Legal and Scholarship funds the week following completion, as an active member of the collective bargaining unit of the Teamsters Union Local No. 115, for one hundred eighty (180) days. Effective September 1, 2018, payment will commence the week following completion as an active member of the collective bargaining unit of the Teamsters Union Local No. 115 for ninety (90) days.

## ARTICLE 32 - MAINTENANCE OF STANDARDS

32.1  The Employer agrees that all conditions of employment relating to wages, hours of work, overtime differentials, bonuses, fringe benefits, and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, or its effective date, whichever is earlier, and the conditions of employment shall be improved whenever specific provisions for improvement are made elsewhere in the Agreement.

32.2  The Employer agrees not to enter into any other agreement or contract, written or oral, with his employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement.

## ARTICLE 33 - DISCIPLINE AND DISCHARGE

33.1    Disciplinary action shall be issued for just cause only.

33.2    Discipline shall be handled in a professional manner.

33.3    The Employer shall issue disciplinary action no later than seven (7) calendar days after learning of the circumstances on which the discipline is based.

    A.      The Union shall grant the Employer extensions of this timeline after written request inclusive of a justifiable business reason for an extension of this period.

    B.      The Union shall not unreasonably deny such request for extension.

33.4    All disciplinary action shall be provided in writing and issued to an Employee with a Steward present (unless the employee does not wish one to be present).

    A.      If the employee indicates that he/she wishes a steward to be present, and one is not available, the meeting shall be temporarily postponed unless it involves a suspension or termination in which Investigatory Leave shall be utilized.

33.5    The Union Business Agent shall be provided copies of all disciplinary action, via fax or e-mail, no later than forty-eight (48) hours after such disciplinary action has been issued.

33.6    Discipline shall not remain in effect for a period of more than twelve (12) months from the date of said notice.

33.7    Any employee may request that the Union investigate his/her discharge, suspension, or warning notice.

33.8    The Employer shall utilize progressive discipline as follows:

    A.    First Written Warning

    B.    Second Written Warning

    C.    Final Written Warning and 3-Day Suspension Without Pay

    D.    Termination

33.9    Progressive disciplinary action as outlined in Article 32.8 shall not be applicable and employees will be subject to immediate suspension or immediate discharge if the cause of such disciplinary action is:

    A.    Gross insubordination

    B.    Theft of Company or Client funds or property

    C.    Use, possession, sale or being under the influence while on duty (inclusive of lunch break and rest periods) of alcohol or illegal drugs

    D.    Possession of firearms or illegal weapons while on duty (inclusive of lunch break and rest periods)

    E.    Threats of physical violence or Physical violence excluding self-defense

    F.    Deliberate damage or damage through gross negligence to Employer or Client property

    G.    Harassment

    H.    Unauthorized use of Company or client property, confidential information, personnel records, tools or equipment

    I.    Sleeping during working hours

    J.    Providing a false excuse related to timekeeping, paid or unpaid time off or leave of absence and/or falsification or unauthorized alteration of any employment related documents including but not limited to employment applications, personnel records and time records

The parties agree that the above list is not exhaustive and other infractions of similarly serious nature may lead to immediate suspension or immediate discharge in accordance with Article 32.1.

33.10   Prior to suspending or discharging an employee the Company will attempt to advise the Union Business Agent by email or phone call of the impending disciplinary action.

33.11 **_Investigatory Leave:_** The Employer shall utilize Investigatory Leave to conduct investigations into matters or events which may cause an employee to be immediately suspended or discharged in accordance with Article 32.8.

A.    All employees placed on Investigatory Leave shall be compensated their regular daily hours until such Investigatory Leave is complete and discipline is issued or the employee is returned to regular duty without loss of time.

B.    All employees placed on Investigatory Leave shall be notified in accordance with Article 33.3 and Article 33.4.

C.    Investigatory Leave shall not exceed leave of thirty (30) calendar days without written consent of the Union.

33.12 Upon discharge, the Employer shall pay all money due to the employee within the next normal payroll cycle.

33.13 If an employee is placed on investigatory leave as provided for in this Article, the Employer shall continue to make the required contribution for Health and Welfare, Pension, Legal Services and Scholarship Benefits.

33.14 Reasonable rules and regulations with respect to disciplinary action or procedures may be drafted by the Employer provided they do not conflict with any provision of the Agreement and are approved in writing by the Union to which such approval will not be unreasonably denied.

A.    Such rules and regulations and/or changes thereto shall be sent to the Union at least thirty (30) days in advance and the Employer, upon request, will meet with the Union Business Agent and Union Steward(s) to discuss and receive input regarding the modifications thereto.

## ARTICLE 34 - DRUG & ALCOHOL TESTING POLICY

34.1    The Employer and the Union recognize that they must endeavor to provide safe and efficient operations for the protection and benefit of the general public, and the Employer's guests and employees. As part of its efforts to achieve this goal, the Employer must require that its work be performed by employees who are not under the influence of illegal drugs or alcohol at work. For purposes of this Agreement, the term "drugs" shall include drugs and alcohol, as appropriate.

34.2    The parties agree that the Union will be provided advance notice of changes in the Company's Drug Free Workplace Act policy and procedures for testing in accordance with Article 33.14. The Parties agree drug testing will be for resonable suspicion or workplace injury or accident in accordance with the Occupational Health and Safety Act. The Employer shall not conduct random drug testing unless required to do so by law or where the parties agree it is appropriate.

A.    A blood alcohol level of 0.04% or higher shall constitute a confirmed positive.

## ARTICLE 35 - SEPARABILITY AND SAVINGS

35.1     If any Article or Section of this Agreement or of any Supplements or Riders thereto should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement and of any Supplements or Riders thereto, or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

35.2    In the event that any Article or Section is held invalid or enforcement of or compliance with which has been restrained, as above set forth, the parties affected thereby shall enter into immediate collective bargaining negotiations, upon the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such Article or Section during the period of invalidity or restraint.   If the parties cannot agree on the replacement language within sixty (60) days after beginning of the period of invalidity or restraint, either party shall be permitted all legal recourse in support of its demands notwithstanding any provision in this agreement to the contrary.

## ARTICLE 36 - GENERAL CLAUSES

36.1    The Employer shall furnish work uniforms to each employee when needed, and the employees will be responsible for cleaning/washing such uniforms as well as being responsible for any lost or stolen uniforms.

> A.    The Company will provide rain gear jackets and pants to Catering employees. Catering employees will be financially responsible for the loss or damage to the provided rain gear.

36.2    Any employees working overtime will not be given time off to offset the overtime work.

36.3    Where new classifications for which rates of pay are not established by this Agreement are put into use within operations covered by this Agreement, rates governing such operations shall be subject to negotiations between the parties.

36.4    Rates agreed upon shall be effective as of the date classification is put into use.

36.5    There will be no split-shifts without prior agreement with the Union.

36.6    The Employer will give all employees seven (7) days advance notice of changes in shift hours.

36.7    Effective for the third (3rd) academic quarter job bid in the Spring of 2020, employees shall have all regularly scheduled days off ("RDOs") in consecutive order during the work week of their permanent schedule.

36.8    Employees may participate in any pre-tax commuter benefit program offered by Aramark on the same terms and conditions as provided by Aramark to non-bargaining unit employees. The program enables employees to pay for their work-related public transportation and/or parking expenses through pre-tax payroll deductions. The program may be unilaterally modified or eliminated at the Employer's discretion, and such modification or elimination will not be subject to bargaining. The Employer will provide the Union with advance notice if the program will be modified or eliminated.

## ARTICLE 37 - WORKERS COMPENSATION TEMPORARY TRANSITIONAL DUTY PROGRAM

37.1   In order to facilitate the return to work of an employee who has suffered an on-the-job injury or illness, the Company may implement a Temporary Transitional Duty program, to provide a temporary, modified work assignment until the employee reaches Maximum Medical Improvement, but in no case longer than ninety (90) calendar days.

37.2   Prior to offering a Temporary Transitional Duty assignment to an employee, the Company will give the Union three (3) business days' notice of the proposed position and modifications.  If the Union objects to the assignment for good cause, the Company will delay implementation of the proposed assignment for up to five (5) additional business days, during which time the parties will meet (in person or by telephone) to review and attempt to resolve the Union's objections. If the parties are unable to agree, the Company may proceed with the implementation of the assignment and the Union may pursue the matter through the grievance and arbitration procedure.

37.3   No employee shall be disciplined for rejecting a Temporary Transitional Duty assignment.  However, the rejection may have an impact on the employee's entitlement to workers' compensation benefits, depending on the applicable state workers' compensation law.

37.4   Nothing herein shall be deemed to require the Company to offer a Temporary Transitional Duty assignment to any employee.  No Temporary Transitional Duty assignment may be extended beyond ninety (90) days. No Temporary Transitional Duty assignment may become permanent without the express written consent of the parties.

37.5   Nothing herein shall be construed to add to or diminish the obligations of the parties under the Americans with Disabilities Act and/or state or local law relating to accommodation of disabilities.

## ARTICLE 38 - JOB BID AND JOB POSTING

38.1   The Union and Employer agree to conduct the posting, bidding, awarding and fulfilling of all job openings utilizing the attached job posting templates for temporary positions and permanent positions.

A.   Temporary positions shall not include unscheduled call-outs or any absences that are less than fourteen (14) calendar days.

B.   The Company shall offer non-posted temporary work in accordance with Article 17.3.

38.2   Prior to the commencement of the regular academic term in September of each year the Employer shall conduct the Job Bid.

A.   All employees will be notified in writing by regular mail no later than twenty-one (21) calendar days in advance of the date, time and location of the Job Bid in which all open bargaining unit positions will be posted in a place viewable by all bargaining unit members for bidding.

B.   At least fourteen (14) calendar days prior to the 3rd and 4th academic quarters, the employer will conduct a bargaining unit job bid. Jobs will be posted at all Employer locations for a period of seven (7) calendar days.  The job bid for the 4th academic term may be conducted as a posting rather than an in-person bid due to the reduced number of schedules available.

C.     If positions remain open after the Job Bid:

    1.     The position(s) shall be posted for a period of forty-eight (48) consecutive hours for employees to bid on as an extended temporary position.

    2.     Such extended temporary positions shall be awarded based on qualifications, seniority, and availability.

    3.     The positions shall be filled by employees to whom they are awarded for a period of sixty (60) calendar days or until a new hire is retained by the Employer to fill the extended temporary position.

    4.     Management reserves the right to split the positions into individual daily shifts.

38.3    All open bargaining unit positions which occur throughout the fall, spring and summer academic terms will be posted in a place viewable by all bargaining unit members for a period of five (5) consecutive calendar days and for no less than one-hundred and twenty (120) consecutive hours. Temporary positions shall be posted for a period of three (3) consecutive days. The Company will post the initial temporary vacancy not vacancies arising therefrom.

38.4    All postings shall be signed by the department or unit manager responsible for posting such opening for bidding. Any bargaining unit employee shall also sign the posting at the beginning and end of the posting period as witnesses.

38.5    Bargaining unit employees wishing to bid on temporary or permanent openings must sign the job posting before the conclusion of the posting period to be considered for the position.

38.6    In accordance with Article 12, the assigned manager shall award open positions to bargaining unit employees who have signed the temporary or permanent posting utilizing length of continuous service with the Employer as the main factor. In each instance a determining factor shall be ability and necessary qualifications to perform the particular job.

38.7    In accordance with Article 36.6 the Employer shall provide notice and honor the job bid within seven (7) calendar days from the conclusion of the job posting period.

38.8    In the event the Employer must operate under non-normal business hours (including but not limited to holidays and special events) during the fall, spring and summer academic terms, the Employer shall post its needs for bargaining unit employees in accordance with this Article.

38.9    During the annual and quarterly Job Bids Catering Department employees will be able to bid into the Cafeteria Department or Retail Department without losing their seniority and vice versa.

38.10   When the total scheduled hours for the Cafeteria/Retail Department changes by five percent (5%) or more, except for summer, a new schedule will be posted for bidding in accordance with Article 38 – Job Bid and Job Posting.

38.11   The parties further agree that the Employer will endeavor, subject to the needs of the business, to consider the seniority ranking of employees when making changes between scheduled bids. The parties further agree that if it reduces a forty (40) hour per week position between scheduled bids, other than during the

summer break period or during break periods during the academic year as provided for in Article 4.2, the affected employee shall have the right to exercise their seniority.

## ARTICLE 39 - RESPECT AND DIGNITY

39.1    The Employer and Union agree that each employee and supervisory representatives of the Employer shall be treated with dignity and respect. Issues arising under 38.1 should be raised in a labor management committee meeting in accordance with Article 39 of the Agreement, and in further communications to higher levels of each organization as appropriate and necessary. The parties have agreed that this section shall not be subject to the grievance and/or arbitration provisions of the Agreement.

39.2    Verbal abuse, threats, or harassment, including sexual harassment, by employees, managers or supervisors towards each other will not be tolerated.

## ARTICLE 40 - LABOR MANAGEMENT COMMITTEE

40.1    The Employer and Union agree that a Labor Management Committee, consisting of no more than three (3) individuals from each party, shall meet at mutually agreeable times and places to apprise the other of problems, concerns, and suggestions related to the operations and the work force with the aim of promoting a better understanding and more cooperative and mutually beneficial relationship amongst the parties.

A.    Such meetings shall not be construed as opening the Agreement for collective bargaining negotiations nor shall any subject matter discussed at the meetings constitute a step in the grievance procedure.

B.    Employees participating in the Committee meetings shall be paid at their regular hourly rate for time spent in such meetings.

## ARTICLE 41 - HANDBOOK

40.1    The Union and the Employer understand the terms and provisions of the Company Handbook and Location Guide will be applicable. In the event of a conflict between the Handbook and Location Guide the terms of the Agreement shall prevail. Changes to the handbook are subject to Article 32.14 of the Agreement.

## ARTICLE 42 - TERM

42.1    This Agreement shall be effective September 1, 2019 and shall continue in full force and effect up to and including August 31, 2022, and shall continue from year to year thereafter unless either of the parties hereto shall give to the other sixty (60) days written notice prior to its original termination date or prior to the end of any subsequent year of an intention to terminate the Agreement.  Any and all changes in compensation and benefits agreed to after the said termination date shall be retroactive to the day following such termination date, unless otherwise agreed.

42.2    In the event of an inadvertent failure by either party to give the notice set forth in Section (1) of this Article, such party may give such notice at any time prior to the termination or automatic renewal date of this Agreement.  If a notice is given in accordance with the provisions of this Section, the expiration date of this Agreement shall be the sixty-first (61st) day following such notice

**IN WITNESS WHEREOF** the parties hereto have duly executed this Agreement as of the 1st day of September 2019.

| | |
|---|---|
| **ARAMARK EDUCATIONAL SERVICES LLC:** | **TEAMSTERS UNION LOCAL NO. 115:** |

_____

**Arlene Angelo**
_Director – Labor Relations_

_____

**Kristina Coble**
_Resident District Manager_

_____

**Megan Dawson**
_Human Resrouces Director_

_____

**Robert Freiling, Jr.**
_Business Agent_

_____

**Shane Reilly**
_Secretrary-Treasurer & Business Manager_

_____

**Edward Askew**
_Steward Representative_

_____

**Michael Brown**
_Steward Representative_

_____

**Conley Munroe**
_Steward Representative_

_____

**Michelle Pfiefer**
_Steward Representative_

_____

**Eric Rogers**
_Steward Representative_

# APPENDIX A – ATTENDANCE POLICY

It is the responsibility of every employee to report to work on time, unless otherwise approved by your manager.

All instances of unplanned absences, tardiness and/or leaving early (including those for which an employee receives personal holiday, sick or vacation pay) will be recorded.

Failure to comply with these requirements may result in disciplinary action up to and including termination.

The four steps of progressive discipline shall be:

Verbal Warning

Written Warning

Final Written Warning

Termination

Unscheduled Absence Without Sick Leave, Unapproved Early Departure and Lateness:

1st unscheduled absence without sick leave, or

1st early depature without approval, or

3rd lateness in a one-year rolling period will result in a verbal warning (first step of progressive discipline)

Each further unscheduled absence without sick leave, or early depature without managerial approval, or lateness will result in further discipline as set forth above.

Note: An employee will not be subject to discipline for any absence, tardiness, or early departure protected under the FMLA, the ADA or other applicable law or contractual right, provided the employee complies with the appropriate call out procedures.

## APPENDIX B – JOB POSTING TEMPLATES

## TEMPORARY JOB POSTING
*Drexel University Dining Services*

---

**JOB DETAILS**

**LOCATION:**    X                   **START DATE:**    X
**POSITION:**    X                    **END DATE:**    X
**CLASSIFICATION:**  X
**REQUIREMENTS:**  X

**SCHEDULING INFORMATION**

**FRI:**  X                   **TUE:**  X
**SAT:**  X                   **WED:**  X
**SUN:**  X                   **THU:**  X
**MON:** X

**HOURS PER WEEK (FT/PT):** X

**POSTING INFORMATION**

**POSTING PERIOD:**  X - X

**POSTED:**_____     **REMOVED:**_____

**DATE & TIME:** _____     **DATE & TIME:** _____

**WITNESS:**_____     **WITNESS:**_____

**UNION BIDS**

1. _____

2. _____

3. _____

4. _____

5. _____

6. _____

7. _____

# PERMANENT JOB POSTING
*Drexel University Dining Services*

## JOB DETAILS

| | | | |
|---|---|---|---|
| **LOCATION:** | X | **START DATE:** | X |
| **POSITION:** | X | **END DATE:** | X |
| **CLASSIFICATION:** | X | | |
| **REQUIREMENTS:** | X | | |

## SCHEDULING INFORMATION

| | | | |
|---|---|---|---|
| **FRI:** | X | **TUE:** | X |
| **SAT:** | X | **WED:** | X |
| **SUN:** | X | **THU:** | X |
| **MON:** | X | | |

**HOURS PER WEEK (FT/PT):** X

## POSTING INFORMATION

**POSTING PERIOD:** X - X

**POSTED:**_____     **REMOVED:**_____

**DATE & TIME:** _____     **DATE & TIME:** _____

**WITNESS:**_____     **WITNESS:**_____

## UNION BIDS

1. _____

2. _____

3. _____

4. _____

5. _____

6. _____

7. _____

## LETTER OF UNDERSTANDING

Teamsters Union Local No. 115 (hereafter "Union") and Aramark Educational Services LLC (hereafter "Employer") parties to a Collective Bargaining Agreement (hereafter "the CBA") agree to the following letter of understanding (hereafter "Agreement"), subject to ratification by the eligible members of the Union bargaining unit:

**Attendance Policy:**   Effective September 01, 2019, all occurrences, vebal warnings, first written warnings, and final warnings (excluding "Last Chance Agreements") for attendance issued only between September 01, 2018 and August 31, 2019 to employees who are actively in the bargaining unit as of September 01, 2019 shall be considered void as a one-time "clean slate" to begin the school year.

**Fair Workweek Ordiance:**   The Union and Employer have bargained regarding scheduling and have set forth their negotiated scheduling provisions in the Collective Bargaining Agreement. The parties hereby agree that all of the provisions of the Philadelphia Fair Workweek Ordinance (Bill No. 180694-A) are explicitly waived and will not apply to the bargaining unit employees covered by the Agreement as long as this Agreement is in effect.

**Catering Department:**

1.     The parties understand that the business needs of the Catering Department vary greatly from those of the Cafteria Department and Retail Department.

2.     In recognition of this variance in operations, and  notwithstanding the other provisions in the Collective Bargaining Agreement, the parties agree to the following regarding schedules, additional hours, and overtime:

   A.     Catering Department schedules for bid may not comprise precise scheduled days or hours of work but will include an estimated number of hours per week.

   B.     The Employer will make best efforts to honor the seniority ranking of Catering Department employees when scheduling employees for early and daytime work in the Catering Department.

   C.     In the event Catering Department business needs cannot afford all Catering Department employees their estimated number of weekly scheduled hours, the available weekly scheduled hours shall be afforded by seniority, subject to the needs of the business.

   D.     In the event changes are necessary to the Catering Department schedules, the Employer shall provide all Catering Department employees reasonable notife of schedule changes in poerson or via telephone or other manner which the parties agree to.

      1.     Article 36.6 shall not apply to these changes

      2.     The Employer shall endeavor to provide as much notice as possible of changes.

   E.     In the event additional hours or overtime hours are needed to meet Catering Department business needs, the Employer shall first seek to offer such hours to bargaining unit employees in the Catering

Department by seniority. If Catering Department business needs are not met, the Employer shall have the right to assign additional or overtime hours to Catering Department employees via inverse seniority order. If such endeavors to assign additional hours or overtime hours to Catering Department employees via seniority or inverse seniority do not provide the necessary astaff to meet Catering Department needs, the Employer shall first offer such hours to qualified bargaining unit employees on the volunteer list followed by casual employees. Employees must have the ability and necessary qualifications to perform the particular job.

**IN WITNESS WHEREOF** the parties hereto have duly executed this Letter of Understanding as of the 1st day of September 2019.

| **ARAMARK EDUCATIONAL SERVICES LLC:** | **TEAMSTERS UNION LOCAL NO. 115:** |
|---|---|

_____

**Arlene Angelo**
*Director – Labor Relations*

_____

**Robert Freiling, Jr.**
*Business Agent*

_____

**Kristina Coble**
*Resident District Manager*

_____

**Shane Reilly**
*Secretrary-Treasurer & Business Manager*

_____

**Megan Dawson**
*Human Resrouces Director*

_____

**Edward Askew**
*Steward Representative*

_____

**Michael Brown**
*Steward Representative*

_____

**Conley Munroe**
*Steward Representative*

_____

**Michelle Pfiefer**
*Steward Representative*

_____

**Eric Rogers**
*Steward Representative*